|, CALOGERO, C.J.,
concurring.
I concur in the majority’s per curiam opinion because I agree that plaintiffs failed to meet their burden of showing that a delay in obtaining ordinary relief would cause injustice, one of the essential factors that must be shown to warrant the issuance of a writ of mandamus. This is particularly true in light of the fact that the retirement funds are not constitutionally required to achieve solvency until the year 2029. La. Const. Of 1974, Art X, § 29. Plaintiff Retirement Funds waited several decades after enactment and amendment of the relevant statutes before filing suit, and I see no sufficient injustice to be suffered by waiting a short while longer until these matters are resolved in ordinary proceedings, especially where the legal issues raised herein are likely to be resolved in several other actions proceeding by ordinary process — cases pending in the First Circuit Court of Appeal and the Fourth Circuit Court of Appeal in addition to a case in the Civil District Court for the Parish of Orleans, the latter case being one in which R.S. 11:1481 and R.S. 11:82 have been found to be unconstitutional.[1]
U also concur because in addition to the reasoning of the majority, I believe mandamus in this matter is improper because plaintiffs failed to make the required showing of the existence of a clear ministerial duty owed by the defendants under RS ll:1481(l)(a)[2], the Assessors’ Fund financ *958 ing statute, and RS 11:1561,[3] the Clerks’ Retirement and Relief Fund financing statute.[4]
|aI will address first the Clerks’ Fund financing statute to determine if it imposes on defendants a ministerial duty which is clearly provided by law. The Clerks’ Fund financing statute, R.S. 11:1561, provides in pertinent part that “the state tax collector for the city of New Orleans shall deduct one-half of one percent, of the taxes shown to be collected by the tax rolls of each respective parish.” Although the statute places an obligation on the “state tax collector for the city of New Orleans”, the plaintiffs have not identified such person as a defendant in this matter. Rather, the defendants are the City of New Orleans; Richard Bruñe, as Treasurer for the City of New Orleans; and Courtland Crochet, Collector of Revenue for the City of New Orleans in his official capacity as city tax collector. Thus, in my opinion, on its face, R.S. 11:1561 does not apply to the defendants in this lawsuit.
My conclusion that R.S. 11:1561, on its face, does not apply to the defendants herein does not change upon considering the Court of Appeal’s assertion that the phrase “state tax collector for the city of New Orleans” in the Clerks’ Fund financing statute, “with its lowercase ‘s’ in ‘state’, clearly refers to the person who collects state taxes for the city, whatever his title may be.” 99-3049, at p. 5 (La.App. 1st Cir. 2/16/01), 796 So.2d 687, 690. To the contrary, when the statute was amended in 1954 to include the phrase “and in the Parish of New Orleans, the State Tax Collector for the City of New Orleans”, such phrase referred to a then existing specific state officer, who, except for a short period of time in the year 1935, had never collected municipal taxes, nor had he the authority to do so. 1945 La. Acts 91.[5]
*959 | /tThe office of State Tax Collector for the City of New Orleans was created by the Constitution of 1898. La. Const, of 1898, Art. 309. Article 309 authorized the appointment of seven “State Tax Collectors for the City Of New Orleans”, with the first appointments under that constitutional provision to take place after the general election in 1900. Id. See also State ex rel. Carbajal v. Looney, 154 La. 457, 459, 97 So. 657 (1923).[6] La. Const. of 1898, Art. 309 was amended by 1906 La. Acts 8 and adopted November 6, 1906 to make the offices of the state tax collectors for the City of New Orleans elected positions. Thereafter, the offices of the seven tax collectors were consolidated into one “State Tax Collector for the City of New Orleans.” La. Const, of 1913, Art. 309.
The office was continued in the Louisiana Constitution of 1921. La. Const. of 1921, Art. 14, § 21. It was abolished in 1975. 1975 La. Acts 59. Prior to this office’s abolition in 1975, at a time in 1962 when it was fully operational, the Clerks’ Fund financing statute was amended to refer to the office in lower case letters as “state tax collector for the city of New Orleans.” 1962 La. Acts 26 (amending R.S. 13:933). . Despite the abolition of the office in 1975, the phrase “state tax collector for the City of New Orleans”, after its initial inclusion in the statute in 1954, was retained in every subsequent amendment, including the latest amendment in 1991 with the consequent present language of the statute. 1991 La._J_gA.cts 74.[7] The plaintiffs would have this Court conclude that the phrase “state tax collector for the city of New Orleans” has a different meaning now than it did when it was first included in the statute in 1954, or when the legislature amended the phrase to use lower case letters in 1962, prior to the office’s abolition in 1975. To the contrary, in my view the phrase “state tax collector for the city of New Orleans” in R.S. 11:1561 does not refer to the City’s Collector of Revenue nor does it indicate that municipal taxes were to be included in what was to be deducted and remitted to the Clerks’ of Court Retirement and Relief Fund. Therefore, for these reasons (as well as for the applicable reasons set forth below), I would find that the district court erred in issuing a mandamus against defendants under R.S. 11:1561.
Turning to the Assessors’ Fund Financing Statute, R.S. ll:1481(l)(a), I would find here, too, that the plaintiffs have not sufficiently met their burden of demonstrating the existence of a clear ministerial duty on the part of the defendants in this lawsuit to make payments to the Assessors’ Fund from the City’s municipal taxes. In my opinion, R.S. ll:1481(l)(a) is not clear and unambiguous regarding the alleged ministerial duty of the City’s tax collector.
The first area in which R.S. ll:1481(l)(a) is ambiguous is its lack of clarity as to the taxes specifically subject to the deduction and remittance. R.S. ll:1481(l)(a) states that a percentage of the “taxes shown to be collectible by the tax rolls, ..for the *960 city of New Orleans ...are subject to being deducted and remitted. (Emphasis added.) However, contrary to plaintiffs’ position, this phrase simply does not, without more explanation or description, require retirement fund | ¡Reductions to be made from the municipal taxes of the city of New Orleans. “Tax rolls” do not, in and of themselves, show what taxes are collectible thereon. Because R.S. 11:1481 does not specifically mention or single out municipal taxes, it is presumptuous to conclude that the phrase “taxes shown to be collectible by the tax rolls, ... for the city of New Orleans” imposes a burden on the municipality of New Orleans, a burden that is not placed on any other municipality in the state. This becomes readily apparent upon considering the legislative history (to be discussed hereafter) and the fact that when the Assessors’ Fund financing statute was first amended in 1952 to include a reference to the “State Tax Collector for the City of New Orleans”, the phrase “the aggregate amount of taxes shown to be collected by the tax rolls of each respective parish, ...” referred to state ad valorem and Levee Board taxes that were collected by the State Tax Collector for the City of New Orleans who used the City’s tax rolls for his purpose. 1952 La. Acts 220.
The statute’s lack of clarity becomes even more apparent when the testimony of former City Treasurer Richard Bruñe is considered. Mr Bruñe made clear that there is only one tax roll, and this tax roll is used by the various taxing authorities to determine the amount of taxes due and payable to them respectively. In his June 19, 1997 deposition (introduced in the district court below), Mr. Bruñe, in discussing ad valorem tax collection, stated at page 13: “[w]e mail the bills, we collect the revenues, and we distribute [to] the various taxing authorities.” When asked if he was familiar with how the tax bills are calculated or how the taxes are levied, Mr. Bruñe responded: “The taxes are levied by the various taxing authorities in the form of a millage. The millage is applied to assessed values as determined by the assessors.” (emphasis added.) It is apparent from Mr. Brune’s testimony that there is one set of assessed values to which various millages are ^applied to determine the amount of taxes due to certain prescribed taxing authorities. In other words, taxes due and payable to the City, the School Board, or the Levee District are all premised on the same tax rolls prepared by the assessors and are calculated by the assessors using the millages levied by each tax recipient body applied against the same single set of assessed values. Accepting plaintiffs’ position that the phrase “taxes shown to be collectible by the tax rolls, ... for the city of New Orleans” refers to municipal taxes would lead to the illogical extension that the City owes a percentage of any and all taxes that are collected using its tax roll, including taxes due and payable to the City, the School Board, the Levee District, special taxing districts in the City, etc.
An examination of R.S. 47:1993 sheds some light on the proper meaning of the word “tax roll.” R.S. 47:1993, which is applicable statewide, provides for the preparation and filing of the tax roll by the assessor. R.S. 47:1993(A) provides that, as soon as the assessment lists have been approved by the parish governing authorities as boards of reviewers, the assessors shall prepare the assessment rolls in triplicate, after which a copy shall be delivered to the tax collector, one copy to the Louisiana Tax Commission, one copy to the recorder of mortgages, and two copies of the grand recapitulation sheet to the legislative auditor. Section (A)(3) of the statute provides that the assessors shall prepare said rolls by parish, school board, police jury, levee district and by any other recipients of ad valorem taxes, except by munici *961 pality. If any municipality requests such a roll, the assessor shall be required to prepare such a roll. However, in that event, the assessor’s salary and expense fund shall be reimbursed by the municipality in accordance with R.S. 47:1993.1(C).[8]
IsR.S. 47:1993 makes clear that (1) the assessor, in every parish including Orleans, prepares the tax roll; (2) if requested and reimbursed for his expenses, the assessor must include in his tax roll the assessments and taxes of municipalities; and (3) all entities, with the exception of those municipalities opting to prepare their own assessments and tax rolls, use the same single tax roll prepared by the assessor of each parish, including Orleans. The same single document called the “tax roll” or the “tax rolls” may include the state, parish, school board, special districts and other recipients of ad valorem taxes, including municipalities which levy ad valo-rem taxes and request such inclusion.
The language of R.S. ll:1481(l)(a), “taxes shown to be collectible by the tax rolls, ..., for the city of New Orleans ”, standing alone, does not indicate to which taxes it refers. Judge McDonald apparently agreed that this was an unanswered question, because in his mandamus judgment below he inserted the phrase “Orleans Parish” as a modifier to “tax rolls”, perhaps in an attempt to clarify which taxes were covered by the mandamus. Regarding the Assessors’ statute, Judge McDonald ordered defendants
to deduct one percent (1%) of taxes shown to be collectible by the Orleans Parish tax rolls, including that shown on the tax roll to be exempted by virtue of homestead exemptions, for the City of New Orleans, and to henceforth remit such funds to the Louisiana Assessors’ Retirement Fund in accordance with Louisiana Revised Statute Sec. ll:1481(l)(a) for the ^present tax year and each subsequent tax year.
(Emphasis added.) (Similar language is included in the mandamus relating to the Clerks’ Fund financing statute.) Judge McDonald inserted the non-responsive phrase “Orleans Parish” despite the fact that neither financing statute (R.S. 11:1481 or R.S. 11:1561) makes any specific reference to Orleans Parish tax rolls.
In his judgment of mandamus, Judge McDonald appears to impose a duty only relating to Orleans Parish taxes on defendants (which could refer only to non-municipal taxes such as the Orleans Parish School Board tax); but this is far from clear. Such a conclusion is contrary to plaintiffs’ position that the mandamus applies to the City’s municipal taxes. Further, even if Judge McDonald meant to make solely “Orleans Parish” taxes sub *962 ject to the assessment, or if he meant to include therein City taxes, his order is still unclear because it does not take into account parish taxes that are specifically exempted by law from such assessments, such as taxes collected for the Orleans Parish School Board.[9]
Further evidence of the ambiguity in the term “tax roll” is the existence of a feasible and logical interpretation of the application of R.S. 11:1481 and R.S. 11:1561 that is diametrically opposed to that offered by the plaintiffs and accepted by the lower courts. The plaintiffs argue that the key to interpreting the statutes in question is not the authority or practice of the tax collector but, rather, the nature of the “tax rolls” of the parish. Hence, the plaintiffs argue, in every parish except Orleans, one can distinguish the tax rolls of the parish from the tax rolls of the municipalities within the parish, and that only the tax rolls of the parish are subject |into the deduction for retirement systems. They also argue that in Orleans Parish there is only one tax roll and that it is this “single” roll, containing the ad valorem taxes of all tax recipient bodies, which is subject to the deductions for retirement systems.
However, as shown by R.S. 47:1993, every parish, including Orleans, has a single document called the tax roll, an instrument confected by the assessor and filed with the recorder of mortgages, and this roll contains the assessments and millages for all tax recipient bodies in the parish, including municipalities.
This understanding of the meaning of the term “tax roll” leads to an alternative interpretation of R.S. 11:1481 and R.S. 11:1561 which focuses not on the nature of the tax roll, but rather on the historical authority of the entities collecting the tax and their general practice. Under that interpretation, municipal taxes were not subject to the deductions required by the retirement funds financing statutes. Sheriffs, who traditionally collected parish taxes, would deduct and remit a percentage of the parish taxes collected, using the single tax roll of the parish, while the State Tax Collector for the City of New Orleans would deduct and remit a percentage of the taxes he traditionally collected — the state ad valorem tax and the Orleans Levee Board tax — using the single tax roll of Orleans Parish.[10]
If we accept plaintiffs’ interpretation of the financing statutes, another unanswered query with an attendant possible ambiguity is, when did such an obligation arise? The plaintiffs never clearly answer that question. The argument advanced by the plaintiffs regarding “tax rolls” implies that the obligation to make deductions from the taxes of the City of New Orleans existed from the first 171 enactment of the statute in 1950. At other times, plaintiffs either argue or imply that the obligation began when the office of the State Tax Collector *963 for the City of New Orleans was abolished in 1975, or when, in 1989, the reference to the state tax collector for the City of New Orleans was dropped from the Assessors’ Fund financing statute. As will be shown below, the legislative history shows that neither retirement statute applied to New Orleans’ municipal taxes upon their initial enactment. In sum, I believe that the statutes at issue, on their face, are unclear and ambiguous as to whether the City’s municipal taxes were, or are, subject to the obligations imposed therein.
An understanding of the traditional roles of the sheriff as tax collector and the State Tax Collector for the City of New Orleans will aid in understanding R.S. ll:1481(l)(a). Since 1879, the sheriff in every parish, except Orleans, has had the constitutional responsibility to collect state and parish ad valorem taxes. However, the language of the mandate does not necessarily prohibit the sheriff from collecting other ad valorem taxes. La. Const. of 1921, Article 7, § 67 provided that the sheriff, except in the parish of Orleans, “shall be the ex officio collector of State, parish and all other taxes, except municipal taxes, which, however, under legislative authority, he may also collect.” Thus, it is clear that the sheriff does not normally collect municipal taxes, but may do so if specifically directed to do so by the legislature. La. Const, of 1974, Art. V, Sec. 27 provides that the sheriff “shall be the collector of state and parish ad valorem taxes and such other taxes and license fees as provided by law.” R.S. 47:2051 currently provides that the sheriffs are collectors of all “parish and district taxes.” State law does in fact authorize sheriffs in certain parishes to collect municipal taxes.[11]
halt is clear that sheriffs in every parish, with the exception of Orleans Parish, have the authority to collect, and do collect all non-municipal ad valorem taxes. It is also clear that some sheriffs collect municipal ad valorem taxes, but only when specifically directed to do so by the legislature.
Now let us consider the historic background of the office of “state tax collector for the City of New Orleans.” A government for the territory of Orleans was established in 1805 with the city’s first charter. Section 9 of this early charter granted the mayor and city council the power to tax “in such manner as they may deem proper.” By 1879, the City’s authority to tax also appeared in the Louisiana Constitution. La. Const. of 1879, Art. 202 states that “the taxing power may be exercised by the General Assembly for State purposes, and by parishes and municipal corporations, under authority granted to them by the General Assembly, for parish and municipal purposes.” 1882 La. Acts, 109 provided for the levying of municipal taxes by the municipal corporations of the State, “which said tax shall be due and payable at the proper office of said municipal government immediately after said levy, or as soon thereafter as the tax bills can be prepared.”
As stated earlier, the state constitution of 1898 provided a procedure for the collection of certain taxes. In parishes other than Orleans, the sheriff was ex-officio collector of State and parish taxes.[12] In Orleans, however, there were seven State *964 Tax Collectors, one from each municipal district. In 1906, the seven were consolidated into one.[13]
11sExcept for a very limited time in 1935, the state tax collector for the city of New Orleans, much like parish sheriffs, was not generally responsible for the collection of municipal taxes.[14] Certainly, the legislature knew of this limitation on the power of the state tax collector for the City of New Orleans when it established the framework for financing the Assessors’ and Clerks’ retirement funds and included the State Tax Collector for the City of New Orleans in the Assessors’ Fund in 1952 and in the Clerks’ Fund in 1954.
The Assessors’ Fund financing statute, as originally enacted in 1950, made no mention of the parish of Orleans or the City of New Orleans. 1950 La. Acts, No. 91. However, in Board of Trustees, LA Assessors’ Retirement Fund v. Montgomery, 57 So.2d 58 (La.App.Orl.1952), the Court of Appeal made clear that the 1950 statute applied as well to the “State Tax Collector for the City of New Orleans”. Defendant in that case was George Montgomery, who held this elected position which was established in 1898 and which was continued by the State Constitution of 1921. La. Const. of 1921, Art. 14, § 21. In an apparent response to this court of appeal decision, the Legislature amended the statute in 1952 to include a designation of the “State Tax Collector for the City of New Orleans” as an entity with responsibility under this statute. It is clear from Mr. Montgomery’s title of “State Tax Collector for the City of New Orleans” that he was only to collect “state” taxes, which were the then-prevailing state ad valorem 5-% mill tax and the 2 mill tax (raised to 5 mills in 1974) for the Orleans Levee Board, a state political subdivision with jurisdiction in Orleans Parish alone.
The Assessors’ Fund financing statute was amended several times over the 114next several decades. In 1960, the amount to be deducted by the State Tax Collector for the City of New Orleans was increased to $ percent, whereas other parishes’ deductions remained at 1/4 percent. 1960 La. Acts 98.
Clearly, from 1950 to 1971, the years in which there was a fully functioning state tax collector for the City of New Orleans, the taxes from which deductions had to be made were only those actually collected by the state tax collector for the City of New Orleans, namely the state 5 3/4 mill tax and the 2.5 mill tax of the Orleans Parish Levee Board. No one deducted or was required to deduct a percentage of the municipal taxes collected by the City of New Orleans through its Department of Finance. The framework of deductions to be made from taxes was clear: (1) in all parishes, except Orleans, the sheriff and ex officio tax collector was authorized and required to deduct 1/4 of 1 percent of the taxes collectible from the ad valorem tax rolls of the parish (i.e., 1/4 of 1 percent of state, parish, and district taxes but not city taxes), and to remit these monies to the Assessors’ Retirement Fund; and (2) in Orleans Parish, the state tax collector for the city of New Orleans was authorized and required to deduct 1/4 of 1 percent in the years 1950-1959 and, from 1960-1974, 1/2 of 1 percent, of the taxes (the state 5 *965 3/4 mill tax and the Orleans Parish Levee Board tax) collectible on the basis of the tax rolls of the entire city, and to remit these monies to the Assessors’ Retirement Fund.
After 1971, several actions occurred that obscured and complicated this simple framework of collection. In 1972, the 5 3/4 mill tax was abolished by Act 3 of the Extraordinary Session of 1972. In that same year, the Property Tax Relief Fund (PTRF) was abolished and state revenue sharing was instituted.[15] In 1973, |1BAct 150 of the Regular Session of 1973 was enacted to provide (1) that, beginning with the taxes levied for calendar year 1974 and thereafter, the taxes levied by the board of commissioners of the Orleans Levee Board were to be collected by the City of New Orleans; and (2) that the Director of Finance of the City of New Orleans was authorized to deduct from the aggregate amount collected from the Levee Board’s taxes such amounts as were previously deducted by the state tax collector for the City of New Orleans for retirement systems.[16] In addition, Act 153 of the Regular Session of 1973 required the tax collector for each parish and the tax collector of the City of New Orleans to make the deductions legally established for retirement systems in the amount (1/4 of 1 percent in all parishes except Orleans; and 1/4 of 1 percent in Orleans), if available, that such retirement systems would have received in the preceding calendar year if the state 5 3/4 mill ad valorem tax had not been repealed. With the passage of the 1973 acts, the dollar contributions to be derived from the original framework were preserved even though the methods of collection were changed.
After 1973, the framework was made even more complex both by the elimination of the Orleans Levee Board as a contributor to the Fund and by the way in which several re-enactments of the antecedents to R.S. 11:1481 and 11:1561 were worded. For example, in 1974, Act 299 of the Regular Session of 1974 amended and reenacted the statute relative to the Assessors’ Retirement System by (1) extending the amount to be deducted to taxes extended on the homestead ^exemption (i.e., taxes that would have been collected if the homestead exemption did not exist); and (2) increasing the percentage to be deducted by the state and/or city tax collector for the City of New Orleans to 1 percent of the taxes to be collected. Presumably, the language “state and city tax collector for the City of New Orleans” was added because the City of New Orleans was, since the beginning of 1974, already collecting Levee Board taxes, and the office of the state tax collector was scheduled, pursuant to the provisions of Act 495 of 1974, to be abolished in 1975. Presumably also, the deduction was raised to 1 percent *966 because it became clear to the Assessors’ Retirement Fund in 1974 that a lawsuit challenging the constitutionality of the Fund’s deduction from the taxes of the Orleans Parish Levee Board would be successful and would, therefore, completely eliminate the Levee Board’s contribution to the Fund.[17]
Thus, from 1974 onward, very little remained of the original framework of financing the Assessors Retirement Fund in Orleans Parish through deductions. The funding that would have been deducted from the state 5 3/4 mill tax was replaced by revenue sharing funds. The funding that would have been deducted from Orleans Parish Levee Board taxes was eliminated by the lawsuit referred to above and by Section E of Act 741 of 1975, prohibiting all deductions from Levee Board taxes except a collection commission to be paid to the City of New Orleans.
Despité the repeal of the state 5 3/4 mill tax and the elimination of the deduction requirement relating to Levee Board taxes, the authority of the statute would appear to have remained in effect in Orleans Parish so as to apply in Orleans Parish to any future state taxes and to any parish taxes and district taxes levied after 1171974 and not specifically exempted by law.
The plaintiffs have argued that, because R.S. 11:1481 directs the “city tax collector for the city of New Orleans” to do the collecting, then the city’s taxes must surely have been meant to be the taxes to be collected under the statute. Therefore, it is important to note how the phrase “city tax collector” came to be included in the statute. In 1974, during the same legislative session when the phrase “city tax collector” was first included (i.e, “state and/or city tax collector for the City of New Orleans”), 1974 La. Acts 495 called for the merger of the responsibilities of the State Tax Collector for the City of New Orleans into the office of the collector of revenue of the state of Louisiana. This legislation authorized the collector of revenue of the state to contract with the City of New Orleans to utilize the services and personnel of the city of New Orleans to assist him in the performance of his duties which were then being transferred to his office, including the issuance of tax researches, the handling of tax sales and redemptions of property, and the performance and discharge of such other duties as the collector of revenue may deem necessary and proper. Thus, with the conclusion of this merger, the legislature gave the state collector of revenue the authority to enter into a contract with the City to perform functions previously carried out by the State Tax Collector of the City of New Orleans.
The office of State Tax Collector for the City of New Orleans was abolished in 1975. 1975 La. Acts 59. In 1974 and in subsequent amendments to R.S. 11:1481, the legislature no doubt recognized the merger of responsibilities and the demise of the office of the State Tax Collector. The legislature, in coupling the phrase “city tax collector” with the phrase “state tax collector”, and then deleting “state tax collector”, was bowing to the reality that the type of taxes formerly |1scoIlected by the state tax collector for the city of New Orleans (i.e., state and district taxes) were now being collected for the state Collector of Revenue by the City of New Orleans. Nonetheless, there was no indication whatsoever that the legislature was intending thereby to change the type of taxes to be collected. Even though it was now the responsibility of the city tax collector (and *967 no longer the state tax collector for the city of New Orleans) to deduct a percentage of certain taxes and remit them to the retirement funds, there is no indication of legislative intent to change the type of taxes to be deducted and remitted (namely, state, parish, and district taxes, but not municipal taxes).
The Assessors’ Fund financing statute was not amended again until 1987. Meanwhile, the revenue sharing bills enacted each year continued to provide for the retirement funds deductions from New Orleans’ share of revenue sharing funds. 1974 La. Acts, No 718 required the City of New Orleans to make the deductions legally established for retirement systems in the amount that such retirement system would have received in the respective calendar year, had not the state 5-3/4 mill tax been repealed. In 1981, the revenue sharing act for the first time set forth a specific dollar amount to be paid by the City of New Orleans for the retirement systems ($123,826 for the Assessors’ Retirement Fund.) 1981 La. Acts, No. 840. (This amount was a significant increase over what New Orleans contributed the year before, $45,941.47. 1980 La. Acts 628.) No other parishes were required to contribute a set amount, but rather they were allowed to utilize a table of percentages to determine what they owed the retirement funds. The establishment of a “set amount” for New Orleans continued in future revenue sharing bills (e.g., $138,472 for the Assessors’ Retirement Fund in 1984, 1984 La. Acts 946; $168,474 in 1985, 1985 La. Acts 900). Therefore, it is clear that the City regularly | ^contributed to the retirement funds, as required by law, albeit with a portion of its assigned revenue sharing monies.
1987 La. Acts 162 included amendments to the Assessors’ Fund financing statute. The statute as amended thereupon referred to the “state or city tax collector for the city of New Orleans.” However, this change in language from “state and/or city” cannot have been intended to be a substantive change as there is no explanation regarding why this change was made, in the minutes of either the House or Senate committee that considered the bill. In the House Retirement Committee, the only discussion noted was that the bill was presented by the Assessors’ Association and then was reported favorably without objection. The only explanation of amendments offered in the Senate Retirement Committee was to begin “an employer contribution” to the Fund. It was noted that this would “assist the problem with the unfunded accrued liabilities of the system”; however, it would only be a “stopgap” measure. Notably, while this bill was being amended to assist in the problem of unfunded accrued liabilities, there was absolutely no mention in the minutes of Committee proceedings of increasing New Orleans’ contribution to the Fund by including city taxes. The Act passed the House of Representatives and the Senate unanimously, including the votes of all of the members of the New Orleans delegation. Surely, if the intent of this legislation was to begin inclusion of city or municipal taxes of the City of New Orleans in the amount to be deducted and remitted to the Assessors’ Fund, certainly at least one member, if not all, of the New Orleans delegation would have opposed it.
In the 1987 amendment to the statute, the Digest prepared by House Legislative Services indicated that the present law “provides [that] contributions to the Assessors’ Retirement Fund shall be based upon a deduction from the ad [ ^valorem taxes shown collectible on the tax rolls of the parish.” In that year, 1987, the legislature’s concern was employer contributions and unfunded liabilities of the system; there is no indication that the legislature’s intent was to subject to the contribution requirement the taxes of the City of New *968 Orleans, or of any other municipality or parish for that matter.
In 1989, House Bill No. 545 effected a comprehensive revision and reorganization of the laws governing the Assessors’ Retirement Fund. However, there is no indication in the bill’s Digest that the inclusion of the language “city tax collector for the city of New Orleans”, which appears for the first time standing alone, was meant as a substantive change in the law regarding the source of the tax revenue. Rather, the first paragraph of the Digest reads:
Proposed law provides for a comprehensive revision and reorganization of the statutory provisions which govern the Assessors’ Retirement Fund. Deletes obsolete provisions. Provides substantive changes in the maximum retirement allowable, the computation of disability benefit, computation of creditable service, and repeals the optional retirement allowable with twenty-eight years of service. Provides for a general revision of the provisions with the changes noted below: (emphasis added.)
There is nothing “below” in the Digest pertaining to New Orleans, and so presumably the use of the language “city tax collector for the city of New Orleans” in place of “state or city tax collector for the city of New Orleans” represented simply a deletion of language which had become obsolete (the office of “state tax collector for the City of New Orleans” having been abolished in 1975), and was only a change in terminology rather than a change in the essential framework of the Fund’s financing. There was no attempt at this time to impose a tax burden on the municipal taxes of New Orleans or that of any other Louisiana city.
A review of Committee consideration of the 1989 legislation also fails to show any intent to impose a tax burden on municipal taxes. Despite plaintiffs’ 1^ argument that the phi’ase “city tax collector” implies authority to collect municipal taxes, in the minutes of the respective legislative committees, there is no indication that this 1989 change was meant to increase the amount of contributions of the City of New Orleans, or to put its municipal taxes at play. When this legislation was considered on June 16, 1989 in the House Retirement Committee, the bill was explained as providing for the comprehensive revision and reorganization of the laws governing the Fund with substantive changes in the benefit provisions. Although the Committee did consider several amendments to the bill, none of the amendments had anything to do with the City of New Orleans. The bill was reported favorably by the House Committee without objection. On June 26, 1989, the legislation was considered in the Senate Retirement Committee. Again, with an explanation of what was to be accomplished by the legislation, there was no mention of any change in the contribution to be made by the City of New Orleans. Senator Dennis Bagneris of New Orleans made a motion to report the bill favorably, which passed without objection. Again, on both the Senate and House floors, this legislation passed unanimously.
During the final votes when the Assessors’ Fund financing statute was amended in 1974 to include for the first time the phrase “state and/or city tax collector for the City of New Orleans”, and when it was amended in 1987 to include the phrase “state or city tax collector for the city of New Orleans”, and when it was amended again in 1989 to include the phrase “city tax collector for the city of New Orleans” (presumably to delete obsolete language), there is no indication that anyone from the New Orleans delegation objected to any of these bills. No doubt, if the purpose of any of these bills was to subject the City’s municipal taxes to the Assessors’ Fund financing statute, there would have been 1 ^opposition, at the least, from New Orleans area legislators.
*969 As can be seen above, the legislative history is complex and lengthy, but it must be understood in order to comprehend the financing scheme of the retirement fund statutes and the evolution of the language of the present financing statutes. Certainly, the lower courts’ consideration of the case gave short shrift to this legislative history, which shows that at no point (committee hearing minutes, Journal entries, preambles to Acts, etc.) is there any indication that the legislature intended that any taxes other than those traditionally collected by the sheriff or in New Orleans by the state tax collector for the city of New Orleans, and certainly not municipal taxes, be used as a basis for payments to the Assessors’ Fund from the City of New Orleans. Rather, viewing the history of the amendments to the Assessors’ financing statute in context, it appears that since there was no counterpart in New Orleans to a sheriff or ex-officio tax collector of the other state parishes, the legislature was merely changing terminology to appropriately name the person or entity which collected taxes levied by the state in New Orleans. In addition, the legislative history also shows the City’s continued contributions to the retirement systems from its revenue sharing appropriations.[18]
Plaintiffs allege that defendants owe a duty under the retirement Funds | ^financing statutes to collect and remit to the respective Funds a percentage of all city or municipal taxes based on the tax rolls of the City of New Orleans. But, as noted above, it is unclear when this duty regarding municipal taxes arose. What is clear is that neither financing statute, when enacted, included such a duty. (1950 La. Acts 91, Assessors’ Retirement Fund; 1950 La. Acts 51, Clerks’ Retirement Fund). Nor was such a duty imposed when the statutes were amended to include reference to the State Tax Collector for the City of New Orleans (1952 La. Acts 220, Assessors’ Retirement Fund; 1954 La. Acts 91, Clerks’ Retirement Fund), nor when the Assessors’ Fund financing statute was amended to reflect the city tax collector’s responsibilities to collect and remit state and Levee Board taxes, which had been delegated to the City by the state Collector of Revenue (1973 La. Acts 150; 1974 La. Acts 299; 1987 La. Acts 162; and 1989 La. Acts 545).
If the legislature wished to impose such a duty to deduct and remit a portion of municipal taxes, it had many opportunities to do so, clearly, and plainly. But the legislative history does not show, and the plaintiffs likewise make no showing, of the imposition of such a duty. The fact that there was no duty by the City of New Orleans relative to its municipal taxes at *970 the inception of these Funds, coupled with the fact that plaintiffs have not pointed to any statutory enactments showing a legislative intent to apply these financing statutes to the city or municipal taxes of the City of New Orleans, and considering the fact that the City of New Orleans has consistently made the required contributions to the retirement Funds from its revenue sharing appropriations — all these facts when considered together — raise a doubt as to the existence of a ministerial duty on the part of the City’s tax collector to deduct and remit municipal taxes to the plaintiff retirement funds that is sufficiently clear and specific so as to warrant enforcement by writ of mandamus.
124Poubt is also cast upon the plaintiffs’ interpretation of the Funds’ financing statutes — and their argument that the City of New Orleans is obliged to subject its municipal tax roll and consequent tax collections to these statutes — by the fact that since the enactment of the statute some forty years ago, and for over twenty-five years since the inclusion of the stand-alone words “city tax collector” in the Assessors’ Fund financing statute, the Retirement Funds and the City of New Orleans have interpreted the financing statutes as being inapplicable to the City’s municipal taxes, and have acted accordingly.
Under the doctrine of contemporaneous construction, when an administrative body has, over a long period of time, placed an interpretation upon a legislative enactment, that interpretation is entitled to great weight in the determination of the meaning of the legislative enactment. Defendants argue that the Court of Appeal placed the burden on the wrong party and that under this doctrine, the actions of the Board of Trustees of the Retirement Funds, in continually accepting the City’s revenue sharing contributions in satisfaction of the City’s obligation, demonstrate the Funds’ construction of the statutes, an interpretation that is entitled to great weight in the determination of the meaning of the statute. While the majority reached its conclusion on other grounds, it did not address this issue. However, I note the Funds’ lack of challenge or lawsuit against the City for at least forty years after the statutes’ enactment, or some twenty-plus years after the term “city tax collector” first appeared in the Assessor’s statute (and has never appeared in the Clerks’ Fund financing statute), does indeed cast further doubt on whether there was a clear ministerial duty on the part of defendants to deduct a percentage of municipal taxes and to remit such taxes to the retirement funds.
In conclusion, in addition to the reasons set forth in the majority’s per curiam ^J^opinion, I would reverse the lower courts and recall the mandamus on the additional grounds that questions abound regarding whether there is a clear ministerial duty owed by the City’s tax collector, and whether the law clearly and unequivocally commands the City’s Tax Collector to deduct a percentage of municipal taxes and to remit such monies to the Funds, questions that are best answered in ordinary proceedings, such as those already pending and proceeding in the pipelines of this court and the Courts of Appeal.[19]
Therefore, I respectfully concur.

. The suit pending in Civil District Court for the Parish of Orleans, entitled Louisiana Assessors' Retirement Fund v. City of New Orleans, No. 94-5896 and 94-5901, was filed by the Louisiana Assessors’ Retirement Fund on April 18, 1994. It was tried in the fall of 2001 and a judgment was issued on January 2, 2002 holding R.S. 11:1481 and R.S. 11:82 unconstitutional. Plaintiffs' counsel herein, representing the Louisiana Clerks’ of Court Retirement and Relief Fund, filed another lawsuit raising a similar issue in the 19th Judicial District Court on March 28, 1995. In that suit, entitled Louisiana Clerks' of Court Retirement and Relief Fund v. City of New Orleans, et al., on May 22, 2000, the district judge signed a judgment on a motion for summary judgment against the City of New Orleans awarding the plaintiff Clerks’ of Court Retirement and Relief Fund the sum of $18,258,997.26, together with legal interest from date of judicial demand, for monies as-sertedly owed by the City from 1974 to 1998. This judgment is pending on appeal in the First Circuit Court of Appeal (Louisiana Clerks’ of Court Retirement and Relief Fund v. City of New Orleans, et al., No 00-CA-2242). The instant petition for mandamus, filed by the same attorney on behalf of both the Louisiana Assessors' Retirement Fund and the Louisiana Clerks’ of Court Retirement and Relief Fund, was filed on April 5, 1999. A fourth case, with different parties but with similar issues, is pending on application for rehearing in the Fourth Circuit Court of Appeal. In the fourth case, the district court granted, and the Fourth Circuit Court of Appeal affirmed, the issuance of a mandamus against the City in favor of the Board of Trustees of the Sheriff's Pension and Relief Fund. (Board of Trustees of the Sheriffs' Pension and Relief Fund v. City of New Orleans, No.2000-2217 (La.App. 4 Cir. 12/5/01), 804 So.2d 751.) An application for rehearing was denied on January 30, 2002, and the Court of Appeal's ruling will not be final until an application for writs to this Court has been acted upon or the delays for filing a writ application have expired.

. R.S. 11:1481(l)(a) provides:
Each sheriff and ex officio tax collector of the state of Louisiana is hereby authorized and required to deduct one-fourth of one percent of taxes shown to be collectible by the tax rolls, including that shown on the tax rolls to be exempted by virtue of the homestead exemptions of each respective parish, and the city tax collector for the city of New Orleans is hereby authorized and required to deduct one percent of taxes shown to be collectible by the tax rolls, including that shown on the tax roll to be exempted by virtue of homestead exemptions, for the city of New Orleans, which money each respective sheriff, tax collector, or any other person performing said duties shall remit to the Assessors’ Retirement *958 Fund in a one-half of one percent, of the taxes shown to be collected by the tax rolls of each respective parish. Each respective sheriff, and in the parish of Orleans the state tax collector for the city of New Orleans, shall remit the money so collected to the Clerks’ of Court Retirement and Relief Fund periodically and at the same time that each of said sheriffs and the state tax collector for the city of New Orleans disburses funds to the tax recipient bodies of their respective parishes.

. R.S. 11:1561 provides:
Each sheriff and ex officio tax collector in the state shall deduct one-fourth of one percent, and the state tax collector for the city of New Orleans shall deduct one-half of one percent, of the taxes shown to be collected by the tax rolls of each respective parish. Each respective sheriff, and in the parish of Orleans the state tax collector for the city of New Orleans, shall remit the money so collected to the Clerks' of Court Retirement and Relief Fund periodically and at the same time that each of said sheriffs and the state tax collector for the city of New Orleans disburses funds to the tax recipient bodies of their respective parishes.

. The Assessors' Retirement Fund and the Clerks' Retirement and Relief Fund are only two of five retirement funds financed in a similar way. Although not at issue in the instant case, the other retirement funds include the District Attorneys Retirement System (R.S. 11:1695); the Registrar of Voters Employees Retirement Fund (R.S. 11:2135); and the Sheriffs' Pension and Relief Fund (R.S. 11:2174).

. In discussing legislative history, it is incumbent to cite to acts of the legislature as well as to existing statutes. Further, to aid in understanding the statutes at issue, other statutes and their enabling legislation, as well as prior versions of the statutes, might be consulted and cited. While it may be true that the parties did not introduce evidence below as to the existence of some of these statutes, or bring these statutes to the attention of the district court, nonetheless it is within this Court's power and authority, and certainly within its duly to find and apply the applicable law, to refer to legislation and the existing laws of our state. Such legal references to statutes, acts of the legislature, or constitutional articles should not be considered to be outside the record in this or any case, just as it is not considered outside the record of a *959 case for a court to cite to jurisprudence not noted by the parties.

. Later in 1898, a statute was enacted to provide for the appointment of six "State tax collectors for the parish of Orleans” (one of the six was for two of the municipal districts), who apparently were to collect taxes in the interim period between 1898 and 1900, when the constitutionally created seven collectors were to be appointed by the Governor. 1898 La. Acts 170, Sec. 36. According to that statute, "the first term of said officers [was to] expire on the second Monday of July, 1900.” Id.

. 1991 La. Acts 74 retained the same language as the previous amendment of 1962 La. Acts 26, but redesignated the statute, moving it from Title 13 into Title 11 with the new designation of R.S. 11:1561.

. Section (A)(4) of R.S. 47:1993 provides that if any municipality prepares its own tax rolls and assessment lists, upon approval of these rolls and/or lists by the parish governing authorities as boards of reviewers, each municipality shall prepare and submit to the Louisiana Tax Commission and the legislative auditor an annual statement of its millage rates and assessed valuation of property within its respective jurisdiction. Section C of the same statute requires the assessor to secure the approval of the tax commission before filing his assessment roll with the tax collector, and the tax commission may instruct all tax collectors not to receive from any assessor any assessment roll or collect any taxes thereon without the written consent of the tax commission. Section D provides that each tax assessor, parish of Orleans excepted, shall complete and file the tax roll of his parish on or before the 15th day of November in each calendar year. Section H of R.S. 47:1993 provides that the recorder of mortgages (or presumably the clerk of court in his mortgage records) shall keep the ''roll” delivered to him among the record books of his office, and it shall be a part of the record of such office. Further, the recorder of mortgages shall index the tax roll in the current mortgage book under the head of "tax roll” and no further record thereof shall be necessary.

. In Orleans Parish School Board v. City of New Orleans, 238 La. 738, 116 So.2d 505 (1959), this Court held that the statutory provision permitting a deduction from tax funds payable to the School Board of a proportionate part of the City's contribution to the Expense Fund of the Board of Assessors for the Parish of Orleans was unconstitutional because the constitutional provision at issue was clear and unambiguous and clearly indicated it was intended that the entire amount collected by the City from this tax must be paid daily to the Orleans Parish School Board.

. This interpretation is supported by the deposition of personnel from tire Louisiana Legislative Auditor's office, referenced by defendants on page 9 of their Original Brief, who stated that the calculations of the tax contributions owed by the respective parishes, excluding Orleans Parish, under R.S. 11:82 do not include fees nor city or municipal taxes, and any city taxes found on a parish tax roll are excluded from the contribution analysis.

. For example, R.S. 47:2051.1 authorizes the sheriff and the tax assessor of Ouachita Parish and the governing authorities of the municipalities of Monroe, West Monroe, Rich-wood and Sterlington to enter into an agreement providing for the collection of the municipal taxes of those cities by the sheriff. R.S. 47:2051.2 provides similar authority for the sheriff and tax assessor of Livingston Parish to collect the ad valorem taxes of the City of Denham Springs.

. La. Const, of 1898, Art. 119.

. La. Const, of 1898, Art. 309, and as amended by 1906 La. Acts 8.

. The City had imposed and collected municipal taxes until 1935. In that year, at the request of Governor Huey P. Long, the legislature passed an act stripping the city of its power to tax and providing for the state tax collector for the city of New Orleans to collect both state and city taxes in New Orleans. 1935 La. Acts 1. Just one year later, the legislature reinstated the city’s authority to levy and collect its municipal taxes. 1936 La. Acts 228.

. The Property Tax Relief Fund (PTRF) was created in 1934 (1934 La. Acts 54) pursuant to Article 10, Section 4, paragraph 9, of the Louisiana Constitution of 1921. The Fund’s purpose was to reimburse the state and its political subdivisions for the loss of revenues resulting from the homestead tax exemption. The PTRF was declared to be unconstitutional by a federal court in 1972 (Levy v. Parker, 346 F.Supp. 897 (D.C.La.1972), aff'd 411 U.S. 978, 93 S.Ct. 2266, 36 L.Ed.2d 955) and was repealed in that same year by Act 10 of Article X A of the Louisiana Constitution of 1921. The PTRF was replaced by revenue sharing (see Article 10, Section 10B of the Louisiana Constitution of 1921 and Act 4 of the Extraordinary Session of 1972).

. As mentioned in footnote 4 supra, the Assessors’ Retirement Fund and the Clerks’ Retirement and Relief Fund are only two of five retirement funds financed in a similar way. Although not at issue in the instant case, the other retirement funds include the District Attorneys Retirement System (R.S. 11:1695); the Registrar of Voters Employees Retirement Fund (R.S. 11:2135); and the Sheriffs' Pension and Relief Fund (R.S. 11:2174).

. This lawsuit, filed in December of 1973, was ultimately decided in favor of the Orleans Parish Levee Board in 1975. See Board of Levee Commissioners of the Orleans Levee District v. George Montgomery, Jr., State Tax Collector, et al, Civil District Court, No 565-263.

. A review of the legislative history of the Clerks' Fund financing statute yields a similar conclusion that it was not the legislature’s intent to encumber municipal taxes. The Clerks’ Fund financing statute was first enacted by 1950 La. Acts 51. Originally, each sheriff was required to deduct one-fourth of one percent of the aggregate amount of the taxes shown to be collected by their respective parish tax rolls and remit the same to the Clerks' Fund. The statute originally specifically excepted the Parish of Orleans. However, in 1954 the statute was amended to also require the State Tax Collector for the City of New Orleans to deduct one-fourth of one percent of the aggregate amount of taxes shown to be collected "by the tax polls [sic] of each respective parish ...” The State Tax Collector for the City of New Orleans collected the state ad valorem tax and the Orleans Levee Board tax, utilizing the City's tax rolls. In 1962, the statute was amended to use lower case letters when referring to the "state tax collector for the city of New Orleans”. 1962 La. Acts 26. Notably, this change to lower case lettering was made at a time when the state office was still in existence. Despite the fact that the office of State Tax Collector for the Parish of Orleans was subsequently abolished by law in 1975 (1975 La. Acts 59), R.S. 11:1561 subsisted and retains the language "state tax collector for the city of New Orleans” to this day.

. While not affecting the Court's decision, or this concurrence, the financial impact on the City of New Orleans by plaintiffs' interpretation of the statutes is of substantial concern. In their brief, defendants point out that if municipal taxes are subject to the statutes at issue, then coupled with the City's revenue sharing contribution to the Assessors' retirement system, the City would be contributing *971 almost half of the total dollars contributed to the Assessors’ Fund by the tax collectors throughout the state of Louisiana (excluding employer and employee contributions). See Defendants’ Original Brief filed October 9, 2001 at pgs. 19-20. Further, according to defendants, testimony in a related matter indicates that City employees comprise only approximately six percent (6 percent) of the total number of Assessor/employees in the State and that the City's average revenue sharing contributions since 1975, alone, have comprised roughly six percent (6 percent) of the total annual non-employee and employee contributions statewide. Moreover, the vast majority, if not all, of the employees of the Orleans Parish Courts are on the City's pension plan and do not participate in the Clerks' of Court Fund. See Defendants’ Original Brief filed October 9, 2001 atp. 7, fn. 11.
Defendants also point out that the City makes a disproportionately larger contribution from its revenue sharing funds than do other parishes. For example, in 1999, the City contributed $168,474 of its revenue sharing funds to the Assessors' Fund, while the Parish of Jefferson contributed only $25,215. 1999 La. Acts 1038. If the City's revenue sharing contribution were added to the tax contribution the plaintiffs claim the city owes, the City's total contribution in 1999 would have been approximately $2,753,394. Defendants' Original Brief, p. 19. Further, by comparison the combined revenue sharing and tax contribution of Jefferson Parish, the largest parish outside of Orleans, would be only $408,716, or a little less than l/7th of the City's contribution. Defendants' Original Brief, p. 19.
Another ill effect of acceptance of plaintiff's reading of the statutes at issue is that it arguably requires the City to make contributions to the Funds with deductions from taxes sheltered by the Constitution. La. Const, of 1921, Article 14, § 24 (continued as a statute by La. Const, of 1974, Art. 14, § 16) provided for dedication of certain municipal taxes to the New Orleans Board of Liquidation of City Debt. Further, it arguably requires the City to make contributions with deductions from taxes dedicated for other purposes which the courts have ruled to be impermissible, as mentioned above. See Orleans Parish School Board v. City of New Orleans, 238 La. 738, 116 So.2d 505 (1959).